JOHN R. TURRENTINE v. WILMINGTON AND WELDON RAIL-
ROAD COMPANY.

*Warehouseman; degree of diligence required of—Bailee without
profit.*

1. A railroad company, the carriage over its road being complete, had
in its possession, as warehouseman, the goods of plaintiff, upon
which the freight had been paid.   The goods were retained in the
warehouse at plaintiff's request.   A fire broke out near the ware-
house, but not on the property of the company.   While the fire
was burning, plaintiff asked permission to remove his goods.
This was refused, because, in the opinion of the company's officers,
if the warehouse were opened much of the property stored therein
would be stolen, and also because they did not think at that time
there was danger of the warehouse taking fire.   The company
made every effort in its power to prevent the communication of
the fire to the warehouse, and, after it was plain that such efforts
would prove fruitless, had the doors of the warehouse broken
open and as many goods removed therefrom as possible.   The
company had property of very great value so located that it must
have been burned before the warehouse could take fire, and the
utmost diligence was used to remove this property.   If such efforts
had been successful, the danger of the warehouse taking fire
would have been greatly reduced; *Held*, that it was not the duty
of the company to act upon the suggestion of plaintiff, or stran-
gers, as to the best method to save the goods in the warehouse.
That if it used all means at its command and acted upon the *bona
fide* judgment of its employees as to the best method to prevent
the destruction or loss of the warehouse and goods therein, it was
not liable for the destruction of plaintiff's goods.

2. The custodian of another's property, who uses the means which, at
the time of danger, appear to him best for its preservation, is not
to be held responsible for failing to adopt measures, which subse-
quent events show would have produced better results.   An honest
and reasonable effort made in the exercise of an honest judg-
ment is all the law requires of him.

CIVIL ACTION, tried before *Shepherd, J.,* and a jury, at Jan-
uary Term, 1888, of NEW HANOVER Superior Court.
Judgment for defendant.   Plaintiff appealed.

This action is prosecuted to recover in damages the value of a lot of hams and bacon transported over the defendant's road to its terminus, the point of delivery, at Wilmington, in this State, which, while in the warehouse of the company, were on the 21st day of February, 1886, destroyed by fire. The complaint attributes the loss to the negligence of the company and its failure to make proper efforts for the safety of the goods, or to allow the plaintiff himself to remove them to a place beyond the reach of the advancing flames. The defendant denies the imputation of negligence and want of due care and diligence in an effort for their preservation; and the issue, drawn from the conflicting averments contained in the pleadings and put in form and passed on by the jury, was as follows:

Were the goods lost or destroyed by the wrongful act or default of defendant? Answer. No.

It was admitted at the trial that on Sunday, the 21st day of February, 1886, the defendant (the carriage over the road being completed) had in its possession, as warehouseman, the goods whose loss is the subject of the suit, whereof the hams had been therein stored for seven or eight days, and the bacon, received later, for two days; that the plaintiff knew of the arrival of the goods and of their deposit in the warehouse, and he had given directions for their delivery when called for, having paid the freight charges thereon; that the warehouse was consumed, with a large amount of goods, besides those of the plaintiff, by an accidental fire that originated elsewhere, on the premises of others some distance away, and that, in its progress and before reaching the warehouse, many buildings and much property were burned; that the fire occurred in the afternoon of the day mentioned and caught the Champion compress, which was burning from a half to an hour, according to differing witnesses as to the time, from which due north was located the warehouse, and that a strong wind was then blowing from the southwest to

the northeast. With these concessions, the testimony bearing upon the question of the defendant's negligence and responsibility for the loss, was as follows:

The plaintiff, whose evidence alone on his own behalf is given in the case upon this point, testified that, while the compress was on fire and a half or three-quarters of an hour before the warehouse caught, he saw Captain Divine, the General Superintendent of company, and said to him, "if you will open the doors of the warehouse all the goods can be saved;" that Divine refused to open the doors, saying there was no danger, that the warehouse was fire-proof, and if the doors were opened, more goods would be stolen than saved. That shortly after, he saw Mr. Bridgers, the President of defendant, and said to him, that if the doors were opened the goods could be saved. Mr. Bridgers replied that the warehouse was fire-proof; to which plaintiff said, "fire-proof, *hell*, with wooden doors"; Bridgers said, "you had better see Divine"; plaintiff replied, he had seen Divine, who had refused to open the doors; Bridgers then said, "Oh for a head for this concern"! That he could have saved everything in the warehouse if the doors had been opened; that the fire was a large conflagration, and burned up a large portion of the city. There was great excitement, and a large number of people of all classes were about the fire, and all very much excited. It was the custom for the railroad company to allow goods to remain in the warehouse after payment of the freight, without charge for storage, to suit the convenience of the consignees to take them away, and the goods sued for were left in warehouse under that custom. When the warehouse was crowded and they wanted room, they would notify us to move the goods. This was done for convenience of consignees. That the warehouse was a pretty substantial brick one, with slate roof and wooden doors. That there was always danger at fires of goods being

stolen; generally the case at large fires that a crowd gathers to plunder.

It was also in evidence, on the part of the plaintiff, that the officers of the defendant did not permit the warehouse to be opened until the warehouse of the W., C. & A. R. R., the building next to the defendant's warehouse, had been so far consumed that its roof had fallen in. That then the locks of the doors were broken, the doors opened, and a considerable amount of goods saved, by removing them from the warehouse. That Superintendent Divine, when requested by plaintiff to open the doors, gave as his reason for refusing, that the warehouse was in no danger, and that the goods would be stolen.

R. R. Bridgers, for defendant, testified that he had no recollection of the plaintiff having had the conversation with him as testified to by the plaintiff; that he was very sure he would have remembered such a conversation, if it had taken place.

James F. Post, for defendant, testified that he was in the employ of defendant at the time of the fire as transfer agent; that the space between the W., C. & A. Railroad warehouse and the warehouse of defendant was full of cars; there were over 150 cars there, most of them full of very valuable merchandise; that the bridge over the river at Hilton, on the W., C. & A. R. R., had broken down, and trains couldn't pass; there were four trains at least delayed here, and all these cars were between the two warehouses; there was a car load of powder, some 6,000 or 8,000 pounds, that came in Saturday night before the fire, on the track between the two warehouses, about midway the train; the employees of the defendant were all absent, it being Sunday, and we had no engine fired up; I went to work, as soon as I got there, to get the powder out; if it had been left there, there would have been great damage to life, probably fifty persons would have been killed. I got an engine fired up, and went to work

before the compress caught, to clear the track, and hauled the powder out of the city; the greater part of the railroad's accommodation to move freight was there between the two warehouses, fully 150 cars; these cars were filled with cotton, naval stores, and valuable merchandise; the spring goods were then going South, and goods of immense value were in these cars; the cars belonged to defendant, and were worth over $400 apiece; all these cars were in much greater danger than the warehouse, because they would have burned before the warehouse; it was necessary to remove these cars to save the warehouse.

Harry Walters, for defendant, testified that he was General Manager of the Atlantic Coast Line; when he got to the fire, it had not reached the compress; the offices of defendant were directly east of compress, and warehouse directly north; the wind was blowing strong from southwest to northeast; the offices were burned, and many of the records of the company; he went below from the offices and saw fire engine—the water had given out—and tried to get it to go down to the river to put the hose in, but they refused; there were a large number of cars between the W., C. & A. R. R. warehouse and the warehouse of defendant; I went there and saw that if we could get the cars out, we could save the warehouse; if we could get these cars out, there would be no danger; we got all the cars out but a few; the lines became so blocked with cars we could not get an engine down; got all the hands we could, and went to pushing the cars out by hand; we got all past the warehouse but one car, which we pushed up to the end of warehouse, but we couldn't push it any further; then I ordered the locks to be broken, and the doors to be opened—we did not have the keys to the doors; the warehouse caught from that one car, and if it could have been moved out, the warehouse would have escaped; the wind was blowing obliquely across, and fire only struck the east end of warehouse; that car was at east end of warehouse,

and set fire to it; we saved about $6,000 of goods by moving them away on lighters, and paid out a large amount for lighters and labor in saving the goods; the instant we saw we could not save the warehouse, we broke open the doors; there is generally a large accumulation of freight on Sunday, and at that time Hilton bridge was broken down, and five or six trains delayed here; there was a very large amount of goods in the warehouses and cars; the offices and records burned before the warehouse; we could not concentrate all attention at any one point; we used all the means at our command; the offices, the warehouses, the passenger sheds, machine shops, cars, &c., of the defendant were all in jeopardy from the fire at the same time; there was about $125,000 of goods in the cars between the two warehouses, and including the two warehouses and the cars, about $175,000 or $200,000; the defendant had property in danger from the fire worth about $500,000. I did not open the doors of the warehouse sooner, for two reasons: I did not think it was in danger, and the goods would have been stolen.

Jno. F. Divine, for defendant, testified: I was General Superintendent of defendant at time of fire; there was a heavy wind, and fire made way rapidly; we had a large amount of freight accumulated here at the time; there were from 150 to 200 cars on the tracks between the two warehouses; we got all the cars out except a few next to the defendant's warehouse, got hands and pushed these out, all but one or two; the warehouse caught from this car; if this car could have been pushed out of the way the warehouse would not have burned; I gave my whole attention to moving out these cars, as the best means of saving the warehouse; there was a quantity of powder in one of the cars, but don't know how much; as soon as I thought the warehouse was in danger, I broke locks of the doors, and opened them; the wind was blowing towards the east end of warehouse, and it caught there; after the doors were opened, we

got out all the goods we possibly could, and saved them by means of lighters; I had no conversation with the plaintiff on that day, as testified to by him.

Mr. Meares testified, that during the fire he saw persons running, and heard them say that there was powder there.

During the examination in chief of the plaintiff, his counsel proposed to prove by him the facts submitted in the following questions, which he propounded to the witness: "Were not the people at the fire saying that the warehouse would burn, and was not that the general belief of the bystanders?" The defendant objected, and the objection was sustained. The plaintiff excepted.

The plaintiff proposed to prove by another witness, that the defendant has settled the claims of other parties whose goods were lost at the same fire, and under similar circumstances. The defendant objected; the objection was sustained, and the plaintiff excepted.

The plaintiff prayed the following instructions:

1. Defendant being custodian of plaintiff's goods, was bound to exercise such care and diligence in saving them, as a person of ordinary prudence would exercise with reference to his own property. *Neal* v. *Railroad,* 8 Jones, 482.

2. If defendant refused or failed to open the warehouse, and attempt to save the goods, or permit them to be saved, when the warehouse was in danger, the fire threatening, and there was good reason to apprehend destruction, it was guilty of gross negligence, and the first issue must be found in the affirmative.

3. If, when the compress was burning, there was a high wind blowing in the general direction of the warehouse, it was negligence for the defendant to refuse to try to save the goods, or permit them to be saved, and the first issue must be found in the affirmative.

4. If, when the fire was raging, the circumstances were such as to cause a person of ordinary prudence to believe

that the warehouse would burn, or was in danger of burning, it was the defendant's duty to try to save the goods, and its failure to do so, until the other warehouse was burning, was negligence, and the first issue must be found in the affirmative.

5. If the defendant refused, or failed to try to save the goods as soon as it could be seen that they were in danger from the approaching fire, it was gross negligence, and the first issue must be found in the affirmative.

6. To establish gross negligence on the part of the defendant, it is not incumbent on the plaintiff to show any fraudulent purpose or conduct. Jones on Bailments, page 21, note; Parsons Contracts, 2d vol., page 88.

7. If the defendant was guilty of negligence, it is not exonerated by reason of the fact that its own goods were in the warehouse with the plaintiff's. Parsons, 2d vol., 91, and note.

8. Even though there was reason to apprehend that opening the warehouse would result in confusing goods, miscarriage in delivery, or theft, this did not excuse defendant for its refusal to permit plaintiff to save his goods, if plaintiff demanded them.

The first, sixth and seventh were given as prayed for. The others were not given as asked; but, after the stating the case, the Court charged the jury as follows:

It is conceded by the plaintiff, that the defendant is not liable as a common carrier, but he contends it is liable as a warehouseman. That the defendant was a warehouseman, is conceded; and the question is, whether the defendant is liable for the loss of the goods, occasioned by what is conceded to have been an accidental fire, originating elsewhere than on defendant's premises, and without any fault on its part. If the jury believe that the goods were stored by defendant in a brick warehouse with slate roof, which was its usual place for the storage of its freight not taken away by

consignees; that the fire was accidental, originating on the premises of others; that when the defendant's property was threatened with danger by the fire, the defendant exerted all the means in its power to save the warehouse, by removing the alleged intervening box cars, and the alleged car load of powder, and other efforts, and by these means decreasing the danger of the said warehouse, and notwithstanding these efforts the warehouse and goods were destroyed; then, nothing further appearing, the defendant is not liable.

The plaintiff denies that the defendant used all the means in its power. First, he says that if the doors of the warehouse had been opened, the goods could have been saved, and that there was sufficient force present to have saved them. The Court charges you, that the defendant was not bound to act upon the suggestion, or offers of bystanders, as to the particular manner in which it should endeavor to save its property, or that which is under its control, but that it is its duty to avail itself of all the means within its reach to save such property; and upon this question the jury may consider the alleged offer of assistance, the opportunity of employing force, and all the circumstances in evidence, and if, at the time when danger threatened the warehouse, the defendant had the means at hand, and could, by their employment, have saved the goods in the warehouse, the defendant failed or refused to employ these means, it would be liable. But if the jury believe that the fire was raging, and many buildings in different parts of the city were in flames; that there was a heavy wind blowing from the southwest to northeast; that the warehouse was due north of the compress; that a large number of persons of all classes and conditions were gathered together in the vicinity of the warehouse, and that there was danger of theft; that a car loaded with a large quantity of powder was blocked in on the track near the warehouse, with a number of cars in front of it; that the fire was on Sunday, when all of the employees of the defendant

were off duty and away; that there was a large quantity of very valuable freight in the cars and the warehouse; that many cars—one hundred and fifty in number—were standing on the track between the two warehouses; that the efforts of the Superintendent and Manager were principally directed in removing the powder first, and then the cars; that these were near to the fire, and in greater danger than the warehouse in which were stored the plaintiff's goods; that several buildings of the defendant, including its offices, containing all of its records, at different points were on fire, and that property to the value of about $500,000, belonging to the defendant and under its charge, was in danger, and threatened by the fire; and if the jury further believe that, by reason of these alleged circumstances, all of the available force at the defendant's command was being used to move the intervening cars and powder, and in other efforts to remove inflammable matter between the fire and warehouse, and that by throwing open the doors of the warehouse the goods therein would have been exposed to a promiscuous crowd and in danger of theft, then the defendant would not be guilty in failing to open the doors of the warehouse.

The plaintiff contends that without regard to this, he is entitled to recover because, after danger threatened, he requested the defendant to open the doors of its warehouse in order that he might remove his goods. This request is denied, and the burden of proof is on the plaintiff to show that he made such request. If you find there was such a request, then the Court charges that it was the duty of persons having freight in such warehouse to apply for its delivery during business hours and on business days, (counsel conceded at this stage of the charge that the demand, if any, was made on Sunday, and that Sunday was not a proper day for the delivery of freight by defendant in the ordinary course of business,) and if, when such demand was made to open the doors, all of the available force of defendant was

engaged in protecting its property, and that of others in its custody, which was in more imminent danger, and that, under the circumstances, it had not the proper force to make a safe delivery of the plaintiff's property in the warehouse, and that opening or breaking open the doors, the key not being there, it is alleged, and allowing the plaintiff to remove his goods, would have exposed a large amount of goods in said warehouse to theft or miscarriage, and defendant was, in good faith, using all of its available means in protecting property in more imminent danger; that the fire was raging and many buildings in different parts of the city were in flames; that there was a heavy wind blowing from the southwest to the northeast; that the warehouse was due north of the compress; that a large number of persons of all classes and conditions were gathered together in the vicinity of the warehouse, and that there was danger of theft; that a car loaded with a large quantity of powder was blocked in on the track near the warehouse with a number of cars in front of it; that the fire was on Sunday, when all of the employees of the defendant were off duty and away; that there was a large quantity of very valuable freight in the cars and the warehouse; that many cars, one hundred and fifty in number, were standing on the track between the two warehouses; that the efforts of the superintendent and manager were principally directed in removing the powder first, and then the cars; that these were nearer to the fire and in greater danger than the warehouse in which were stored the plaintiff's goods; that several buildings of the defendant, including its offices containing all of its records, at different points, were on fire, and that property to the value of about $500,000 belonging to the defendant and under its charge, was in danger and threatened by the fire, and if the jury further believe that by reason of these alleged circumstances all of the available force at the defendant's command was being used to move the intervening cars and powder, and

100—25

in other efforts to remove inflammable matter between the fire and the warehouse, then the defendant was under no obligation to open its doors to the plaintiff.

But if, under the circumstances, you believe that the defendant had the means to have safely delivered to the plaintiff his goods, or that opening the door and permitting him to receive the same, would not, under the circumstances, have probably exposed the other property stored in the warehouse to theft, then the defendant is liable.

There was a verdict in favor of the defendant, and the plaintiff moved for a new trial.

1. Because of the exclusion of testimony—see exceptions.

2. Because of the refusal of the Court to give instructions as asked.

3. Because of errors in the charge as given.

The motion was overruled, and judgment rendered in favor of the defendant; the plaintiff appealed.

*Messrs. D. L. Russell* and *T. R. Purnell*, for the plaintiff.
*Mr. Geo. Davis*, for the defendant.

SMITH, C. J., (after stating the facts). The aspect of the case, pressed with most earnestness in the argument here, grows out of the fact that the plaintiff, at a time when the goods could have been removed with safety, was not allowed to enter the warehouse and take possession of his own for that purpose, and it is assigned as error, that the instruction numbered 2, in those requested by the plaintiff to be given to the jury, was refused. The others following, and denied, are substantially embodied in that, and need not be separately considered. In place of these, the charge of the Court is fully set out, and seems, to us, to. more fairly present the merits of the controversy, as developed in the evidence, to the minds of the jury. The law is there laid down, both carefully and with much accuracy, well calculated to aid

and guide the jury to a just verdict. It certainly does not necessarily follow, that a want of due regard to the rights and interests of the plaintiff is manifested, in the refusal, at the time of the conflagration, under the attendant circumstances, when it was hoped the efforts then made to stay the progress of the fire would be successful, and the warehouse and what it contained be saved, to throw open its doors and expose them to increased hazard from entering sparks and depredation of others. The defendant owed no less a duty to others than to the plaintiff, and its efforts, with all the forces at command, seemed to have been directed to the preservation of all the goods in its custody.

The plaintiff was present to look after his, but other owners were not there; and it was not an unreasonable apprehension, that opening the house and giving indiscriminate access to the goods therein deposited, would result in a much greater loss.

There were, moreover, as is proved, a large number of cars blocking up the way, one hundred and fifty or more, and a large quantity of gunpowder in some of them, and the efforts of the men, under the direction of the officers, were mainly made to remove them, so that the flame passing along them might be arrested before reaching the warehouse, and this was well nigh accomplished, only one or two left, which it was found impracticable to move in time, and through these, the fire was communicated to the warehouse. According to the superintendent, if the cars could have been removed, the warehouse would not have been burned. It is unnecessary to repeat the testimony, as it is set out in full, but it tends to show energetic and well directed efforts to save the large property of others in its hands and its own, from. the spreading and consuming element that was devouring houses all around, and we do not see any error in the charge of the Court in regard to its responsibility. It must not be forgotten that one's judgment, under

such trying circumstances, is not as calm and deliberate in determining what then ought to be done, as afterwards upon a retrospect would have promised better results, and this severe rule of liability does not rest upon the custodian of another's property. If an honest and reasonable effort is made, suggested, at the time, as the best line of action to be pursued, and this in good faith, and of this the peril to the defendant's property gives full assurance, it exonerates from liability for loss. The warehouse, built of brick, and its roof slate covered, seems to have been deemed well nigh fire-proof; and even now, in reviewing the past, it is not clear that the plaintiff should have been permitted to take away his goods, and thereby endanger, if not insure the destruction of the other goods; and if it were otherwise, and that the servants of the company erred in their action, it could hardly be imputed as negligence in them to so act upon an honest, though it may turn out to be a mistaken, judgment.

But the law is so fairly left to the jury in the charge, that nothing is required of us in support of its correctness. But little aid can assuredly be derived from adjudged cases, as the facts are seldom, if ever, the same, and the question of culpable neglect must, in each case, depend upon its own facts. It must be declared that there is no error, and the judgment is affirmed.

No error.                                    Affirmed.